CHARLES SEELEY, APPELLEE, v. BRIDGES & JOHNSON, APPELLANTS.

**Mills and Mill Dams.** In 1869, B. & Co. erected a mill at C., and built a dam across the Blue river for the purpose of obtaining sufficient power to propel the machinery of said mill. In 1870, they acquired the right to raise the dam to ten feet and two inches above low water mark. In 1879 the mill was burned and they then commenced the erection of a larger mill near the former site. In January, 1880, S. commenced the erection of a dam across the same river at a point some considerable distance above that of B. & Co. In July, 1881, B. & Co .sought to raise their dam to eleven feet above low water mark, thereby overflowing the mill-site of S. *Held*, That they had no authority to raise their dam above ten feet and two inches.

APPEAL from Saline county. Tried below before WEA-VER, J.

*Dawes & Foss,* and *T. M. Marquett,* for appellants.

*O. P. Mason,* for appellee.

MAXWELL, J.

The defendants are the owners of a mill on the Blue river near the city of Crete, the machinery being propelled by water. They, or at least Bridges and his then partner, Baltzly, built a mill, and erected a dam across the river in 1869, the exact height of which does not appear; but in the fall of 1870, it was raised to ten feet two inches. In 1879, the mill was burned, and the defendants commenced the erection of a larger mill, and in 1881, sought to raise their dam to eleven feet. The plaintiff is also the owner of a mill site on the same river above that of the defendant, on which he has commenced to erect a mill and mill dam and sought to enjoin them from raising their dam, alleging that by doing so the back water from the defendant's mill would render his mill site of no value. The defendants in their answer and cross petition asked for an injunction restraining the plaintiff from erecting a mill dam at that point, alleging that it is within their mill dam and they will thereby be greatly injured, etc.

The court found the following facts: "That the plaintiff, Charles Seeley, is the owner of real estate as stated in the petition, and that the defendants are the owners of real estate as set forth in their answer, and that the Big Blue river flows through both tracts of land, first through the lands of plaintiff and then through the lands of defendants. The court further find that one of the defendants, Bridges, with one Baltzly, purchased the lands which the defendants own at the present time, in the year of 1869, and in that year built a mill and mill dam thereon. That in the year 1875, Baltzly sold his interest in said mill property, and that in the same year, the defend-

ant Johnson, by purchase, became the owner of an undivided one-half interest in such mill, mill dam, and mill site, and that since that time the defendants have been the owners of said mill, mill dam and mill site. The court further find that in the fall of 1879, the mill belonging to the defendants was burned down, that said mill had cost and was worth from twelve to fifteen thousand dollars. That in August, 1880, defendants commenced to lay their plans for rebuilding a new mill on the old site, and that up to the time of the injunction in this case was served, they had expended in building the new mill for machinery, flume, and dam upon said premises, forty-one thousand dollars, and they have now expended the sum of forty-four thousand dollars. The court further find that the land described in the petition, and upon which is situated the proposed mill site and dam of the plaintiff, Charles Seeley, belonged to and was owned by J. C. Bickle on the 24th day of December, 1880, and that on that day it was agreed in writing between the said J. C. Bickle and Bridges, and Baltzly, the then owners of defendants' mill dam and site, that for certain valuable consideration paid by Bridges and Baltzly to J. C. Bickle, the dam which had been recently raised could be maintained at its then present height, and should not be raised so as to further flood said Bickle's land. The court further find that in the fall of 1870, the dam of defendants was raised from eight and one-half feet to ten feet and two inches, and that the dam has from that time been sinking and frequently been repaired and raised by building on the top; that the dam has not been kept up to the height to which it was built in the fall of 1870; but the court is unable to find from the proofs just how high the dam has been at particular dates since the year 1870, and the time of commencing this action, further than it is clearly shown that the dam now, which the court finds to be ten feet two inches high from low water mark on the level of the stream below the dam at low water, is higher than it has been for several

years past. The court further finds that on the 23rd and 24th days of June, 1881, the defendants raised their dam by building on the top eighteen inches, and that the course is now ten feet two inches, and the same height it was in the fall of 1870, after it had been raised at the time of the contract of December 24th, 1870. The court further find that the said dam of defendants backs the water of the stream and increases the depth of the water at the point claimed by Seeley for a mill site, and that the defendants have the right to maintain and keep their dam at its present height, viz., ten feet two inches, and no higher. The court find that Charles Seeley commenced work upon his proposed mill site in December, 1880, and continued to do some work and expended some money up to the time of commencing this action; that in digging race, he expended about three or four hundred dollars, and in excavating for building, twenty-five or fifty dollars, and had laid upon the ground one car load of lumber worth about six hundred dollars, and that since the commencement of the suit, said plaintiff has placed upon said site about three thousand dollars' worth of material and had a small amount of work done. The court further find, that the plaintiff Seeley sued out a writ of *ad quod damnum*, to condemn land above this proposed site January 18th, 1881, and that defendant sued out a like writ to condemn land that might be overflowed by reason of their dam, to eleven feet from low water mark, on the 24th day of January, 1881."

In *Nosser v. Seeley*, 10 Neb., 468, it is said the law favors diligence and gives priority to the person who in good faith first commences the erection of a mill or dam. The law, however, is to receive a reasonable construction. The object is to utilize the water power of the state, and not to create monopolies. The defendants in 1870 acquired the right to raise their dam to ten feet two inches, and this seems to have been as high as they desired to have it, until after the plaintiff commenced the erection of a dam.

There is reason to believe that the object in raising this dam was to prevent competition, as much as to increase the power of their mill; but however this may be, they have failed to make a case entitling them to raise the dam more than ten feet two inches above low water mark. As to the defendant's cross petition, it is sufficient to say that the facts stated therein are not sufficient to entitle them to the relief sought. It is very clear that justice has been done, and the judgment is affirmed.

JUDGMENT AFFIRMED.